IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AJMAL AZIZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-3907 |
| | § | |
| MMR GROUP, INC. and MMR | § | |
| CONSTRUCTORS, INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Ajmal Aziz ("Aziz" or "Plaintiff"), filed this action on December 28, 2017, against defendants MMR Group, Inc. and MMR Constructors, Inc. (collectively, "Defendants"), asserting claims for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII"), the Civil Rights Act of 1988, 42 U.S.C. § 1981 et seq., and the Texas Employment Discrimination Act.[1] Pending before the court is MMR Group, Inc.'s and MMR Constructors, Inc.'s Motion to Dismiss Plaintiff's Original and First Amended Complaint for Lack of Personal Jurisdiction and Improper Venue ("Defendants' Motion to Dismiss Original and First Amended Complaints") (Docket Entry No. 21). For the reasons stated below, the court concludes that Defendants' Motion to Dismiss Original and First Amended Complaints should be granted.

---

[1]Original Complaint, Docket Entry No. 1.

## I. Factual and Procedural Background[2]

Defendants are Louisiana corporations with their principal places of business in Baton Rouge, Louisiana. In 2011 Defendants hired Plaintiff, a Texas resident, as a journeyman C electrician at Defendants' South Carolina location. In 2013 Plaintiff was transferred to Defendants' Corpus Christi, Texas, location where he worked until July of 2015. Plaintiff alleges that in July of 2015 his Texas supervisor told him that he either had to accept a transfer to Defendants' Iowa facility or be laid off. Plaintiff was subsequently transferred to Iowa and promoted first to lead journeyman and then to terminator. Plaintiff alleges that after the transfer to Iowa he was subjected to discrimination, a hostile work environment, and retaliation on the basis of his religion, race, and color by his Iowa supervisor and co-workers. Plaintiff quotes offensive comments that his Iowa supervisor made in 2015 and 2016 while Plaintiff was employed at the Iowa facility. Plaintiff alleges that after he confronted his supervisor regarding the offensive comments he was placed in a lower-paying department. Plaintiff filed a formal complaint with Defendants' human resources department. Plaintiff alleges that a human resources employee at the Iowa location stated that she could not offer assistance. Plaintiff then contacted a human resources manager at Defendants'

---

[2]See First Amended Complaint, Docket Entry No. 20, pp. 5-9 ¶¶ 20-47.

corporate office in Louisiana who investigated the situation. The Louisiana officer informed Plaintiff that no action would be taken against the Iowa supervisor and that Plaintiff would not be transferred back to his previous department. Plaintiff alleges that after he filed these complaints he was assigned to lower-level job duties, and constructively discharged in April of 2016.

Plaintiff filed this action on December 28, 2017, alleging that Defendants have engaged in religious, racial, and/or color harassment, have created, maintained, and condoned a hostile work environment, and have retaliated against Plaintiff.[3] Defendants move to dismiss the action arguing that the court lacks personal jurisdiction over them and that this court is not the proper venue.[4] Plaintiff filed an amended complaint on April 23, 2018.[5] On May 2, 2018, Defendants then filed another motion to dismiss, adopting and attaching its previous motion.[6] Plaintiff filed a response, Defendant filed a reply, and Plaintiff filed a surreply.[7]

---

[3]Original Complaint, Docket Entry No. 1, pp. 8-10 ¶¶ 43-67.

[4]MMR Group, Inc.'s and MMR Constructors, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue ("Defendants' Motion to Dismiss Original Complaint"), Docket Entry No. 15.

[5]First Amended Complaint, Docket Entry No. 20.

[6]Defendants' Motion to Dismiss Original and First Amended Complaints, Docket Entry No. 21.

[7]See Plaintiff's Response to Defendants' Motion to Dismiss ("Plaintiff's Response"), Docket Entry No. 23; Defendants' Reply
(continued...)

## II. Motion to Dismiss for Lack of Personal Jurisdiction

### A. Standard of Review

Dismissal for lack of personal jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(2). When a foreign defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff 'bears the burden of establishing the district court's jurisdiction over the defendant.'" Quick Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 343 (5th Cir. 2002), cert. denied, 124 S. Ct. 66 (2003) (quoting Mink v. AAAA Development LLC, 190 F.3d 333, 335 (5th Cir. 1999)). "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" Id. at 343-344 (quoting Wilson v. Belin, 20 F.3d 644, 648 (5th Cir.), cert. denied, 115 S. Ct. 322 (1994)). "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" Id. at 344 (quoting Thompson v. Chrysler Motors

---

[7](...continued)
Memorandum in Support of Motion to Dismiss Plaintiff's Original and First Amended Complaints ("Defendants' Reply"), Docket Entry No. 26; Plaintiff's Sur-Reply in Opposition to Defendants' Motion to Dismiss ("Plaintiff's Sur-Reply"), Docket Entry No. 29.

-4-

Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)). The court must accept as true the uncontroverted allegations in the plaintiff's Complaint and must resolve in favor of the plaintiff any factual conflicts. Guidry v. United States Tobacco Co., Inc., 188 F.3d 619, 625 (5th Cir. 1999). However, the court is not obligated to credit conclusory allegations, even if uncontroverted. Panda Brandywine Corp. v. Potomac Electric Power Co., 253 F.3d 865, 869 (5th Cir. 2001). "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law to be determined . . . by th[e] Court." Ruston Gas Turbines, Inc. v. Donaldson Co., Inc., 9 F.3d 415, 418 (5th Cir. 1993).

B. Applicable Law

A federal district court may exercise personal jurisdiction over a nonresident defendant if "(1) the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009), cert. denied, 131 S. Ct. 68 (2010). Since the Texas long-arm statute extends as far as constitutional due process allows, the court considers only the second step of the inquiry. Id.

Exercise of personal jurisdiction over a nonresident defendant comports with federal due process guarantees when the nonresident

defendant has established minimum contacts with the forum state, and the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement, 66 S. Ct. 154, 158 (1945) (quoting Milliken v. Meyer, 61 S. Ct. 339, 343 (1940)). Once a plaintiff satisfies these two requirements, a presumption arises that jurisdiction is reasonable, and the burden of proof and persuasion shifts to the defendant to present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 105 S. Ct. 2174, 2185 (1985). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" McFadin, 587 F.3d at 759. "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." Lewis v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001).

1. General Jurisdiction

A court may exercise general jurisdiction over non-resident defendants "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011). "Establishing general

-6-

jurisdiction is 'difficult' and requires 'extensive contacts between a defendant and a forum.'" Sangha v. Navig8 ShipManagement Private Limited, 882 F.3d 96, 101-02 (5th Cir. 2018) (quoting Johnston v. Multidata Systems International Corp., 523 F.3d 602, 609 (5th Cir. 2008). "The 'paradigm' forums in which a corporate defendant is 'at home,'. . . are the corporation's place of incorporation and its principal place of business." BNSF Railway Co. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017) (citing Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014), and Goodyear, 131 S. Ct. 2846). "The exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" Id. (quoting Daimler, 134 S. Ct. at 761 n.19). But asserting that exceptional case is incredibly difficult. Monkton Insurance Services, Ltd. v. Ritter, 768, F.3d 429, 432 (5th Cir. 2014). Vague allegations "that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." Johnston, 523 F.3d at 610.

2. Specific Jurisdiction

A court may exercise specific jurisdiction when the alleged injuries arise from or are directly related to the nonresident defendant's contacts with the forum state. Gundle Lining Construction Corp. v. Adams County Asphalt, Inc., 85 F.3d 201, 205

(5th Cir. 1996) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872 n.8 (1984)); and Quick Technologies, 313 F.3d at 344. To determine whether specific jurisdiction exists, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." Gundle Lining, 85 F.3d at 205. Even a single contact can support specific jurisdiction if the defendant "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" Burger King, 105 S. Ct. at 2183. "The non-resident's 'purposeful availment' must be such that the defendant 'should reasonably anticipate being haled into court' in the forum state." Ruston Gas, 9 F.3d at 419 (citing World-Wide Volkswagen Corp. v. Woodson, 100 S. Ct. 559, 567 (1980)).

There are three parts to a purposeful availment inquiry. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of the plaintiff or a third party. Sangha, 882 F.3d at 103 (citing Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.")). Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. Id. (citing Walden, 134 S. Ct. at 1123). Finally, the defendant must seek some

benefit, advantage, or profit by availing itself of the jurisdiction. Burger King, 105 S. Ct. at 2183. A defendant may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to jurisdiction there. Moki Mac River Expeditions v. Drugg, 221 S.W.3d 569, 575 (Tex. 2007) (citing Burger King, 105 S. Ct. at 2181-85). Since specific jurisdiction is claim specific, "[a] plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 274 (5th Cir. 2006).

C. **Analysis**

1. General Jurisdiction

Defendants argue that the court lacks general jurisdiction over them because Defendants are incorporated in Louisiana with their principal places of business in Baton Rouge, Louisiana, and they do not have continuous and systematic contacts in Texas that render them "at home" in Texas.[8] Plaintiff responds that because Defendants operate four permanent facilities in Texas where they conduct business and employ multiple people, they are "at home" in Texas.[9]

---

[8]Defendants' Motion to Dismiss Original and First Amended Complaints, Docket Entry No. 21, p. 3.

[9]Plaintiff's Response, Docket Entry No. 23, p. 10.

Because Defendants' place of incorporation and principal place of business are in Louisiana, to exercise general jurisdiction the facts must establish an "exceptional case." See BNSF, 137 S. Ct. at 1558; Patterson v. Aker Solutions Incorporated, 826 F.3d 231, 234 (5th Cir. 2016). The Supreme Court has held that Perkins v. Benguet Consolidated Mining Co. constituted such an exceptional case. See 72 S. Ct. 413 (1952); Patterson, 826 F.3d at 235 ("The Supreme Court has found a sufficient basis for the exercise of general jurisdiction over a non-resident defendant in only one modern case—Perkins."). The Fifth Circuit uses Perkins as the "benchmark of the 'exceptional case.'" Patterson, 826 F.3d at 235. In Perkins because the defendant company's operations in the Philippines were halted during war, the company's owner was forced to temporarily relocate to Ohio. 72 S. Ct. at 419. Once in Ohio the owner maintained an office, kept office files of the company, conducted business on behalf of the company, distributed salary checks, used two active Ohio bank accounts for company funds, used an Ohio bank to transfer company stock, held directors' meetings, and supervised the rehabilitation of the Philippine properties. Id. The Court held that the owner thus "carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company [and] [h]e there discharged his duties as president and general manager . . . ." Perkins, 72 S. Ct. at 419. "Because Ohio then became the center of the

corporation's wartime activities, suit was proper there." BNSF, 137 S. Ct. at 1558 (internal quotations and citations omitted).

The Supreme Court's recent decision in BNSF is relevant to the court's analysis. In BNSF the plaintiffs sued a railway company, BNSF, in Montana state court for injuries sustained while working for the company. BNSF, 137 S. Ct. at 1553. The injuries did not occur in Montana, nor did the injuries relate to any work performed in Montana. Id. BNSF was a Delaware corporation with its principal place of business in Texas. Id. BNSF operated railroad lines in 28 states, of which 2,061 miles of railroad track were in Montana. Id. It employed 2,100 workers and maintained one of its 24 automotive facilities in Montana. Id. BNSF moved to dismiss the suit for lack of personal jurisdiction arguing that it was not "at home" in Montana. Id. The Court held that operating over 2,000 miles of railroad track, employing more than 2,000 employees, and other in-state business in Montana "does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in Montana." Id. at 1559. The Court explained that "'the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts'" but rather "'calls for an appraisal of the corporation's activities in their entirety.'" Id. (quoting Daimler, 134 S. Ct. at 762, n.20).

The court concludes that this is not the exceptional case that allows the court to exercise general jurisdiction over Defendants

-11-

in a forum that is not Defendants' place of incorporation or principal place of business. Unlike the company in Perkins, Defendants did not make Texas the center of their operations or temporarily relocate to Texas. At all relevant times Defendants maintained their place of incorporation and principal place of business in Louisiana.[10] Like the railroad company in BNSF, Defendants own facilities, employ workers, and continuously operate in the forum, yet are incorporated and have their principal places of business in another state. Because BNSF's business operations in Montana failed to establish general jurisdiction, Plaintiff's allegations likewise fail to establish general jurisdiction over Defendants. See id. at 1559. Although Defendants have a presence in Texas, "[a] corporation that operates in many places can scarcely be deemed at home in all of them." Daimler, 134 S. Ct. at 762 n.20. The court concludes that Defendants' operations in Texas are not so substantial and of such nature as to render the corporations at home in Texas. Id. at 761, n.19.

## 2. Specific Jurisdiction

The court next must determine whether it may exercise specific jurisdiction over Defendants. "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that

---

[10]First Amended Complaint, Docket Entry No. 20, p. 2-4 ¶¶ 5, 9, 12.

establishes jurisdiction." Goodyear, 131 S. Ct. at 2851 (citations and quotations omitted). Defendants argue that the court does not have specific jurisdiction over them because "they did not engage in suit-related conduct that created a substantial connection with Texas."[11] Defendants argue that Plaintiff's allegations relate exclusively to conduct that occurred in Iowa or Louisiana.[12] Defendants do not dispute that they have minimum contacts with Texas to satisfy the first step in the specific jurisdiction inquiry. See Helicopteros, 472 F.3d at 271 ("(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there . . ."). Defendants dispute the second step of the analysis -- "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts[.]"[13] Id. (citations and quotations omitted).

Plaintiff responds that Defendants' activities within Texas sufficiently relate to Plaintiff's causes of action to establish

---

[11]Defendants' Motion to Dismiss Original Complaint, Exhibit 1 to Defendants' Motion to Dismiss Original and First Amended Complaints, Docket Entry No. 21-1, p. 7.

[12]Id.

[13]See Defendants' Motion to Dismiss Original and First Amended Complaints, Docket Entry No. 21, pp. 3-7; Defendants' Motion to Dismiss Original Complaint, Exhibit 1 to Defendants' Motion to Dismiss Original and First Amended Complaints, Docket Entry No. 21-1, pp. 5-7.

specific jurisdiction.[14] Plaintiff argues that although the harassment predominantly occurred in Iowa, "Defendants' act of assigning him to Iowa occurred at Defendants' Corpus Christi, Texas facility."[15] Plaintiff argues that the wrongdoing "would not have occurred but for Defendants' actions in hiring Texas residents, employing Plaintiff in Texas, and transferring him from Texas."[16] Citing Coats v. Penrod Drilling Corp., 5 F.3d 877 (5th Cir. 1993), Plaintiff argues that conducting hiring and recruitment activities in the forum is sufficient to establish specific jurisdiction.[17] Plaintiff also argues that although the most egregious acts of discrimination occurred in Iowa, Plaintiff alleged that he was discriminated against "throughout his employment."[18] In reply, Defendants argue that "simply hiring an individual who happened to reside in a particular state was not a factor for the decision in Coats as Plaintiff would have the Court believe."[19]

In Coats the plaintiff worked for a vessel-repair corporation, MIS, that was organized under the laws of the United Arab Emirates and had branch offices in Dubai and Abu Dhabi. Id. at 880.

---

[14]Plaintiff's Response, Docket Entry No. 23, p. 12.

[15]Id.

[16]Id. at 15.

[17]Id. at 13-14; Plaintiff's Surreply, Docket Entry No. 29, p. 16.

[18]Id. at 15 n.19 (citing First Amended Complaint, Docket Entry No. 20, p. 2 ¶ 2).

[19]Defendants' Reply, Docket Entry No. 26, p. 19.

Plaintiff was injured on a drilling rig located in the United Arab Emirates while performing pressure testing. Id. He sued MIS in federal court in Mississippi. Id. at 881. On appeal the Fifth Circuit addressed whether the Mississippi court had personal jurisdiction over MIS and held that the exercise of specific jurisdiction over MIS satisfied the Constitutional requirements. Id. at 884. The court concluded that MIS could reasonably anticipate being haled into court in Mississippi because of its "recruitment activities in Mississippi that led to [plaintiff's] hiring, such as holding a meeting in the state and buying ads in papers that circulated in the state." Id. Moreover, after the plaintiff's injury, MIS flew the plaintiff to Mississippi for treatment and paid his medical bills. Id. The court held that "[f]lying an employee to Mississippi and assuming a financial obligation there is not a 'random,' 'fortuitous,' or 'attenuated' act that is an improper basis for jurisdiction." Id. It reasoned that "[b]acking out of that commitment, an act that ultimately cost MIS over $20,000 in the judgment below, was also a choice by MIS that could lead it to foresee appearing in a Mississippi court." Id. The court next analyzed whether assertion of jurisdiction would be fair and reasonable. Id. However, the court did not specifically analyze whether or not the plaintiff's causes of action arose out of or related to MIS's contacts with the forum.[20]

---

[20] In analyzing whether the Mississippi long-arm statute confers personal jurisdiction, the court held that the plaintiff's claims
(continued...)

The factual allegations supporting Plaintiff's claims under Title VII, Section 1981, and the Texas Employment Discrimination Act for discrimination, hostile work environment, and retaliation all focus on Plaintiff's employment in Iowa. Plaintiff worked in Defendants' Corpus Christi, Texas, location until July of 2015,[21] when Plaintiff's Texas supervisor told Plaintiff that he would be transferred to Defendants' Iowa facility.[22] Plaintiff alleges that "<u>[f]ollowing the transfer</u>, Plaintiff was subjected to discrimination, a hostile work environment, and retaliation . . ." and that "[t]hroughout Plaintiff's employment <u>at the Iowa location</u>,

---

[20](...continued)
arise from facts sufficiently incident to MIS's activities in Mississippi. <u>Id.</u> at 883. It reasoned:

> MIS held a meeting in Mississippi and recruited Coats to come work for them. This contact with Mississippi resulted in Coats' employment and Coats was injured on the job. Moreover, Coats claims damages, in part, as compensation for his medical expenses while in a Mississippi hospital, where MIS flew him for treatment. Finally, MIS terminated its payment of Coats' medical expenses while Coats was hospitalized in Mississippi.

<u>Id.</u> However, when analyzing the due process requirements to confer specific jurisdiction, the court remained silent about this prong of specific jurisdiction. The plaintiff sued MIS for negligence, wrongful termination of maintenance and cure, and wrongful termination of benefits under ERISA. <u>Id.</u> at 881. The causes of action for wrongful termination of maintenance and cure and benefits under ERISA relate to medical treatment and financial support after an injury, which MIS provided in Mississippi. <u>See id.</u> at 884. Therefore, although the Fifth Circuit did not explain this prong, or distinguish between the claims, at least those two claims seem to arise out of the defendant's contacts with Mississippi.

[21]First Amended Complaint, Docket Entry No. 20, p. 5 ¶ 22.

[22]<u>Id.</u> at 5 ¶¶ 22-23.

his supervisor and fellow co-workers made frequent statements to the Plaintiff that he was affiliated with Islamic terrorism."[23] Plaintiff details the discriminatory treatment that occurred in Iowa and states that he filed a complaint to human resources in Iowa and in Louisiana.[24] Plaintiff alleges that after he filed these complaints, he was assigned to lower-level job duties.[25]

Plaintiff argues that the court has specific jurisdiction over Defendants because Plaintiff would not have faced discrimination in Iowa but for Defendants' hiring him in Texas and transferring him from Texas to Iowa.[26] But Plaintiff alleges no liability for the hire or the transfer, and that conduct is unrelated to Plaintiff's causes of action for discrimination, hostile work environment, and retaliation. Unlike these purported bases for personal jurisdiction in this case, the basis for personal jurisdiction in Coats was not merely the defendant's hiring activity in the forum, but

---

[23] Id. at 6 ¶¶ 27-28 (emphasis added).

[24] Id. at 6-8 ¶¶ 29-43.

[25] Id. at 9 ¶ 46.

[26] Plaintiff argues that the required causal nexus to establish that the claims "arise from" or "relate to" Defendants' activities in the forum is "but for" or "but for plus" causation. See Plaintiff's Response, Docket Entry No. 23, p. 13. The Fifth Circuit has not definitively ruled on which approach applies to this analysis. However, the outcome of this case would not change whether the "but for" test applies or whether the more stringent "but-for-plus" approach applies. As the court has explained above, the connection between Defendants' actions in Texas and Plaintiff's discrimination claims is too attenuated to establish that Plaintiff's claims arise from or relate to the Defendants' Texas activities.

also the defendant's involvement in the plaintiff's hospitalization and payment of the plaintiff's medical bills in the forum. See Coats, 5 F.3d at 884. Here, the hostile comments by Plaintiff's Iowa supervisor and Iowa co-workers, and the reassignment of job duties after Plaintiff submitted complaints in Iowa and Louisiana are the bases for Plaintiff's claims. See Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County, 137 S. Ct. 1773, 1780 (2017) ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."). Because all of the alleged discriminatory and retaliatory conduct occurred in Iowa (or arguably Louisiana) Plaintiff's causes of action do not arise out of or result from Defendants' contacts with Texas. See Maner v. Health, Civil Action No. 3:15-191, 2016 WL 5394266 at *6 (S.D. Tex. Sept. 27, 2016) (final judgment vacated to order transfer rather than dismissal) (holding that the plaintiff's discrimination and breach of contract claims did not arise out of the defendant's contacts with Texas because none of the discriminatory actions or investigations took place in Texas).

Plaintiff's argument that he alleged in his First Amended Complaint that he was discriminated against "throughout his employment" and not merely in Iowa also lacks merit.[27] Plaintiff failed to allege in either his Original or his First Amended

---

[27]Plaintiff's Response, Docket Entry No. 23, p. 15 n.19.

Complaint a specific act of employment discrimination, hostile work environment, or retaliation that took place in Texas. The single conclusory statement that Plaintiff cites does not mention Texas,[28] and thus is not enough to establish specific jurisdiction. In every other instance that Plaintiff alleges he was discriminated against "throughout his employment" Plaintiff refers either to Iowa or to Plaintiff's Iowa supervisor.[29] The court therefore concludes that Plaintiff has failed to allege facts sufficient to allow the court to exercise specific jurisdiction over Defendants. Because the court concludes that it may not exercise personal jurisdiction over Defendants, it need not decide whether it is fair and reasonable to require the Defendants to litigate in Texas.

### III. Conclusions and Order

For the reasons explained above, the court concludes that Plaintiff has failed to meet his burden of establishing facts capable of supporting the court's exercise of personal jurisdiction over Defendants. Although the court may transfer the case to a proper venue under 28 U.S.C. § 1406(a), neither party has requested such relief or explained which district of Iowa would be appropriate. The court will therefore dismiss this action.

---

[28]First Amended Complaint, Docket Entry No. 20, p. 2 ¶ 2 ("Throughout Plaintiff's employment with Defendants, Plaintiff was subjected to racially hostile comments . . . .").

[29]Id. at 6-7 ¶¶ 28, 33, 36.

Accordingly, Defendants' Motion to Dismiss Plaintiff's Original and First Amended Complaints for Lack of Personal Jurisdiction and Improper Venue (Docket Entry No. 21) is **GRANTED**, and this action will be dismissed without prejudice for lack of jurisdiction.

**SIGNED** at Houston, Texas, on this the 17th day of July, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE